JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:** CV 11-02915 SJO (FFMx)  **DATE:** July 27, 2011
**TITLE:** Morgan Keegan and Co., Inc. v. Horace Grant

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                               Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**            **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                   Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** [Docket No. 20]**; ORDER DENYING AS MOOT PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION** [Docket Nos. 2, 17]

These matters are before the Court on Defendant Horace Grant's ("Grant") Motion to Compel Arbitration and in Opposition to Motion for Preliminary Injunction ("Motion"), filed on May 5, 2011. (Docket No. 20.) Plaintiff Morgan Keegan, Inc.'s ("Plaintiff") filed an Opposition ("Opposition") on June 3, 2011. (Docket No. 29.) Defendant has not submitted a Reply. Plaintiff filed an Application for Preliminary Injunction on April 6, 2011. (Docket No. 2.) Plaintiff then sought a hearing on its Application. The Court found these matters suitable for disposition without oral argument and vacated the hearing set for **June 20, 2011**. *See* Fed. R. Civ. P. 78(b). For the following reasons, Defendant's Motion to Compel is **GRANTED** and Plaintiff's Application for Preliminary Injunction is **DENIED AS MOOT**.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Tennessee corporation with its principal place of business in Memphis, Tennessee. (Compl. ¶ 2.) Defendant is a natural person who resides in Los Angeles, California and is a resident of the state of California. (*Id.* ¶ 3.) On March 18, 2008, Defendant filed a Statement of Claim ("SOC") with the Financial Industry Regulatory Authority ("FINRA"), asserting allegations regarding losses Defendant suffered in several bond mutual funds handled by Plaintiff. (Decl. of Andrew J. Stoltmann ("Stoltmann Decl.") in Supp. of Mot. ¶ 2.) The SOC was brought pursuant to Plaintiff's Preferred Managers Client Agreement's ("Agreement") binding arbitration clause.[1] (*Id.* ¶ 3.) The arbitration ("Grant I") took place on August 25, 2009, through

---

[1] Plaintiff and Defendant both signed a Preferred Advisor Investment Advisory Client Agreement which states that it "incorporates by reference a binding and enforceable pre-dispute arbitration clause contained in the [Agreement]." (Stoltmann Decl. ¶ 4.) Defendant also entered into a "Preferred Managers Program" agreement with Plaintiff where the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-02915 SJO (FFMx)</u>      DATE: <u>July 27, 2011</u>

August 28, 2009.  (*Id.* ¶ 6.)  On September 11, 2009, the panel issued an award to Defendant in the amount of $1,450,000 and costs.  (*Id.* ¶ 7.)

On October 9, 2009, Plaintiff filed a Motion to Vacate the September 11, 2009, award in this Court.  (Compl. ¶ 8.)  Plaintiff argued three basis for vacatur: (1) bias among arbitrators; (2) arbitrators' failure to afford Plaintiff due process; and (3) an inappropriate measure of damages.  (Stoltmann Decl. ¶ 8.)  On July 9, 2010, the Court issued an order ("July 9, 2010, Order") denying Plaintiff's Motion to Vacate.[2]  On July 21, 2010, Plaintiff filed its Notice of Appeal of the July 9, 2010, Order with the Ninth Circuit.  (Compl. ¶ 15.)  Plaintiff's appeal with the Ninth Circuit is still pending.  (*Id.* ¶¶ 25-26.)

On November 1, 2010, Defendant filed a second FINRA arbitration claim ("Grant II") against Plaintiff alleging malicious prosecution and abuse of process.  (*See* Stoltmann Decl. ¶ 12; Mot. 7:19-8:1.)  Defendant contends that Plaintiff "learned confidential information disclosed at the first evidentiary hearing in August 2009 and, knowing that [Defendant's] finances were in trouble, used this information primarily to delay payment to [Defendant]."  (*Id.*)  In response, on January 7, 2011, Plaintiff filed a Request to Decline Jurisdiction with FINRA, alleging that FINRA did not have proper jurisdiction over the claims in Grant II pursuant to FINRA Rule 12203.  (*Id.* Ex. 9.)  On February 16, 2011, FINRA denied Plaintiff's request.  (*Id.* Ex. 10.)

On April 6, 2011, Plaintiff filed its Complaint in federal court, asserting claims for: (1) declaratory judgment stating that Grant II is not arbitrable; and (2) an injunction to prevent Defendant from proceeding with Grant II during the pendency of the Grant I appeal.  (*See* Compl.)  Defendant filed the instant Motion to Compel Arbitration on May 5, 2011.

II.     <u>DISCUSSION</u>

   A.     <u>Legal Standard</u>

The Federal Arbitration Act ("FAA") was enacted to "advance the federal policy favoring arbitration agreements."  *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008).  Federal courts are required to "rigorously enforce agreements to arbitrate."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  Under the FAA, the court, not the arbitrator, must first decide whether a particular dispute is arbitrable.  *See* 9 U.S.C. § 4 (2006).  The court's role, however, is limited "to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."  *Id.*

---

arbitration clause is nearly identical to the Agreement.  (*Id.* ¶ 4, Ex. 4.)

[2] The Court first denied Plaintiff's Motion to Vacate on June 30, 2010.  The Court, however, amended the order's language on July 8, 2010, to confirm the award as the Judgment of the Court.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-02915 SJO (FFMx)</u>  DATE: <u>July 27, 2011</u>

Furthermore, "[i]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

The Court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmonth, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). Thus, the Court applies California state-law principles of contract interpretation for the action at hand.

  B. <u>Plaintiff's Motion to Compel Arbitration</u>

    1. <u>The Court's Lack of Exclusive Jurisdiction over Grant II</u>

Plaintiff contends that the Court has exclusive jurisdiction over Grant II, and thus, the matter cannot be arbitrated. (Opp'n 4:6-7.) Plaintiff first cites to 9 U.S.C. § 10 as the primary source of the Court's jurisdiction.[3] (*Id.* at 4:8-11.) Plaintiff then relies heavily on *Decker v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 205 F.3d 906 (6th Cir. 2000), and states that "[a] party challenging an arbitration award may not bypass the exclusive and comprehensive nature of the FAA by attempting to arbitrate [his] claims in a separate second arbitration proceeding." (Opp'n 4:19-21 (quoting *Decker*, 205 F.3d at 911) (quotation marks omitted).) Plaintiff then concludes that "a second arbitration proceeding which challenges, even indirectly, the original arbitration award is properly enjoined under the FAA." (*Id.* at 4:21-23 (citing *Decker*, 20 5 F.3d at 908, 911).)

Plaintiff first erroneously cites to an inapplicable statute, then misconstrues Grant II as a challenge to the arbitration award of Grant I. First, Grant II does not involve any of the limited scenarios stated in 9 U.S.C. § 10. The instant action is completely devoid of any allegations that the award was procured by fraud, corruption, misconduct, or abuse of power. *See* 9 U.S.C. § 10. "[The Court's] review is limited by the [FAA], which enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award." *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) ("Under § 9 of the FAA, a court must confirm an arbitration award unless . . . as prescribed in [§ 10] . . . ."). Moreover, nowhere does 9 U.S.C. § 10 state that district courts have exclusive jurisdiction as Plaintiff's contend. See 9 U.S.C. § 10 ("[A] United States court . . . *may* make an order vacating the award . . . ." (emphasis added)). Thus, Plaintiff's reliance on 9 U.S.C. § 10 is misplaced.

---

  [3] Title 9 U.S.C. § 10 states: "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration - (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators . . .; (3) where the arbitrators were guilty of misconduct . . .; or (4) where the arbitrators exceeded their powers . . . ." 9 U.S.C. § 10 (2006).

**CASE NO.:**  CV 11-02915 SJO (FFMx)          **DATE:**  July 27, 2011

Second, *Decker* stands for denying parties from making collateral attacks on their arbitration award, which is not the case at hand. In *Decker*, the plaintiff was dissatisfied with her arbitration award and believed that the arbitrators deprived her of a fair hearing. *Decker*, 205 F.3d at 908. She filed a lawsuit, but the district court dismissed her action and stated that her complaint constituted a collateral attack on the arbitration award. *Id.* She then filed an appeal and initiated a second arbitration action, asserting the same allegations as her complaint. *Id.* Upon review, the *Decker* court affirmed the district court's order to enjoin the plaintiff from proceeding with her second arbitration. *Id.* at 911-12.

Defendant is not attempting to collaterally attack Grant I's arbitration award. Here, Defendant's claims under Grant II are wholly different from his first action and do not dispute the award in that action. Defendant did not initiate his second arbitration action because he was dissatisfied; instead, he filed it to obtain the award more quickly. Defendant believes that Plaintiff used "information primarily to delay payment to [Defendant]." (Stoltmann Decl. ¶ 12.) As a result, Defendant filed his claims under Grant II to have FINRA determine whether Plaintiff was inappropriately delaying its payment of the arbitration award. Thus, *Decker* has no bearing on the instant action.

Moreover, Plaintiff's remaining arguments are unavailing. First, Plaintiff argues that "there is no authority under the FINRA Code of Arbitration procedure authorizing FINRA arbitrators to address claims relating to a previously issued award." (Opp'n 4:26-28.) Yet, FINRA independently rejected Plaintiff's argument that FINRA lacked jurisdiction over Grant II. (*See* Stoltmann Decl. ¶ 13, Ex. 10.) FINRA interpreted its own Code of Arbitration and exercised its authority to hear the matter. The Court finds that FINRA has correctly interpreted its regulations. Second, Plaintiff contends that "[Defendant] is not permitted to seek consequential damages flowing from [Plaintiff's] allegedly frivolous appeal until, at the very least, there is a final decision on the appeal." (Opp'n 5:25-27.) Plaintiff's argument goes directly to the merits and validity of Grant II's claims, and the Court cannot rule on the potential merits of Defendant's underlying claims. *AT&T Tech., Inc*, 475 U.S. at 649. Plaintiff may very well be right but that determination goes to the merits and should be left to the arbitrator. Thus, the Court refrains from engaging in such an argument.

As such, the Court does not have exclusive jurisdiction over Grant II. Therefore, the Court must determine whether the matter is appropriate for arbitration, by applying the two pronged approach established by the Ninth Circuit. *Chiron Corp.*, 207 F.3d at 1130.

> 2.  <u>Two Pronged Test: (1) Whether a Valid Agreement to Arbitrate Exists; and (2) Whether the Agreement Encompasses the Dispute</u>

The first prong is not disputed. Both of the parties agree that a valid agreement to arbitrate exists. (*See generally* Compl.; Mot.; Opp'n.) The Agreement provides irrefutable proof that both parties consented to the arbitration provisions. (Stoltmann Decl. Ex. 2.) As such, the first prong is satisfied.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 11-02915 SJO (FFMx) | **DATE:** July 27, 2011 |

The second prong is the point of contention. The Agreement's arbitration provision states that "all controversies between [Defendant] and [Plaintiff] which may arise from any account or for any cause whatsoever, shall be determined by arbitration." (Stoltmann Decl. Ex. 2.) Defendant argues that the Agreement's arbitration language clearly encompasses the claims of malicious prosecution and abuse of process asserted in Grant II. (*See* Mot.) Plaintiff disagrees, arguing that it is not bound to arbitrate Grant II because the Agreement's language does not encompass those claims. (*See* Opp'n 1:13-18.)

> i. The Ninth Circuit's Broad Interpretation of Ambiguous Arbitration Clauses

The Ninth Circuit has held that courts must "resolv[e] ambiguities . . . in favor of arbitration." *Wagner*, 83 F.3d at 1049. Plaintiff, however, contends that the Ninth Circuit construes ambiguities restrictively. (*See* Opp'n 10:1-9.) Plaintiff relies on *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983), stating that "[t]he phrase arising from has been construed relatively narrowly and is restricted to disputes and controversies relating to the interpretation of the contract and matters of performance."[4] (*Id.* at 10:3-5.)

Plaintiff mistakenly applies *Mediterranean* in an attempt to narrow the scope the Agreement's arbitration language. In *Mediterranean*, the Ninth Circuit limited the arbitration language of "arising hereunder" to claims arising under the contract itself, which excluded "matters or claims independent of the contract." 708 F.2d at 1463. The *Mediterranean* court enunciated a distinction between "arising under" and "arising out of or relating to"; the former restricted disputes to the contract itself and the latter included related tort claims. *See id.* at 1463-64. Soon after, the Ninth Circuit in *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991), distanced itself from the limiting language of *Mediterranean*. The *Standard Fruit Co.* court interpreted arbitration language similar to that in *Mediterranean*, but it compelled arbitration pursuant to the Supreme Court's admonition. *See Standard Fruit Co.*, 937 F.2d at 479; *accord Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999). Since *Standard Fruit Co.*, the Ninth Circuit has recognized that "an arbitration clause containing the phrase 'any and all disputes arising under the arrangements contemplated hereunder' must be interpreted liberally." *Simula*, 175 F.3d at 720. Moreover, the language in the Agreement does not contain *any* limiting language such as "arising hereunder" or "arising under." (*See* Stoltmann Decl. Ex. 2.) In fact, the language here is extremely broad, stating that "all controversies . . . which may *arise from any account or any cause whatsoever* shall be determined by arbitration." (*Id.* (emphases added).) At minimum, the Agreement's arbitration language is as expansive as "arising out of or relating to." Thus, *Mediterranean* is inapposite.

---

[4] The Court notes that Plaintiff's counsel incorrectly cites the defendant's name in *Mediterranean Enterprises v. Ssangyong, Corp.* Plaintiff's counsel mistakenly names the defendant, a South Korean corporation, as *Singsong*, rather than *Ssangyong*.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-02915 SJO (FFMx)</u>     DATE: <u>July 27, 2011</u>

> ii.  <u>Whether Grant II's Tort Claims Fall within the Scope of the Ambiguous Arbitration Clause</u>

Defendant essentially alleges tort claims of malicious prosecution and abuse of process in Grant II. (Mot. 7:18-8:1.)  As will be discussed below, Courts have held that broad provisions may include tort claims.  Here, the arbitration provision's broad language of "all controversies" and "any cause whatsoever" covers Defendant's tort claims.

When faced with language such as "arising out of or relating to" the Ninth Circuit has "expansively interpreted similar [and] . . . identical language liberally."  *Simula*, 175 F.3d at 720.  California law adheres to the same expansive interpretation.  Under California law, "[t]he phrase any controversy . . . arising out of or relating to this contract . . . is . . . broad enough to embrace tort as well as contractual liabilities so long as they have their roots in the relationship between the parties which was created by the contract."  *Efund Capital Partners v. Pless*, 59 Cal. Rptr. 3d 340, 348 (Ct. App. 2007) (quotation marks omitted); *see also Plaza Doctors Hosp. v. Blue Cross of Cal.*, 99 Cal. Rptr. 2d 809, 814 (Ct. App. 2000) (rejecting the argument that the broad language of "*any* problem or dispute" is beyond the scope of tort claims).  Indeed, California Courts of Appeals have held that a "plaintiff's malicious prosecution and abuse of process claims [may be] subject to arbitration because they [may] not [be] wholly independent of the contract between the parties."  *Buckhorn v. St. Jude Heritage Med. Grp.*, 18 Cal. Rptr. 3d 215, 219 (Ct. App. 2004) (citing *Merrick v. Writers Guild of Am., West, Inc.*, 181 Cal. Rptr. 530, 130 Cal. App. 3d 212, 218 (1982)).

*Merrick* is a clear example of courts interpreting broad arbitration clauses to include malicious prosecution claims.  The *Merrick* court held that an arbitration agreement's broad and expansive language allowed tort claims of malicious prosecution and abuse of process to be bound by arbitration.  *See Merrick*, 130 Cal. App. 3d at 217.  In *Merrick*, the defendant brought an arbitration claim against the plaintiff for a breach of an agreement to compensate for screenplay work.  *Id.* at 215.  The arbitrator denied the defendant's claim on the merits.  *Id.*  The plaintiff then filed a complaint in court alleging that the defendant brought the arbitration claim "maliciously . . . for the purpose of inflicting harm . . . and causing him to expend his funds and time unnecessarily."  *Id.*  The defendant then petitioned for the court to compel arbitration under the agreement's expansive language of "[a]ny dispute as to whether the arbitrator has jurisdiction or whether any matter is arbitrable."  *Id.* at 217.  Although the language specified that the arbitrator would decide whether a matter was arbitrable, the court had to determine if claims of malicious prosecution and abuse of process were within the scope of the agreement's language.  *See id.* at 219.  The court held that it did.  *Id.*  The court specifically stated that the "action ha[d] its roots in the relationship between the parties . . . [and] the fact that [the plaintiff's] action sound[ed] in tort rather than contract [was] not a valid basis for the order denying [the defendant's] petition to compel arbitration."  *Id.* at 219-20.  Thus, the court compelled arbitration.  *Id.* at 220.

Here, the Agreement's arbitration language is even broader and more expansive than in *Merrick*. It casts a large net by stating that "*all controversies* between [Defendant] and [Plaintiff] which may arise from *any* account or for *any cause whatsoever*, shall be determined by arbitration." (Stoltmann Decl. Ex. 2 (emphases added).)  Again, no limitation is placed on the scope of the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 11-02915 SJO (FFMx)      **DATE:**  July 27, 2011

arbitration agreement.  (*See generally id.*)  Furthermore, Grant II is directly rooted in the relationship between the two parties and is anything but independent of Grant I.  Grant II solely exists to regulate Plaintiff's alleged non-compliance with the arbitration award in Grant I.  Had Plaintiff complied with the arbitrator's award in Grant I, Grant II would be nonexistent.  Additionally, FINRA acknowledged the Agreement's expansive language, denied Plaintiff's request to decline jurisdiction, and demanded that Plaintiff respond to the claims asserted in Grant II.  (*See* Stoltmann Decl. ¶ 13, Ex. 10.)  Given the situation here, where Grant II is a direct response to Plaintiffs refusal to abide by a binding arbitration award, Grant II falls within the scope of the arbitration's language.

    iii. <u>Construing Ambiguities Against the Drafter</u>

Plaintiff unavailingly argues that the broad language of its Agreement "only govern[s] the rights and obligations of the parties' investment relationship and [Plaintiff's] handling of [Defendant's] accounts." (Opp'n 8:16-20.)  The Court cannot see how language like "all controversies . . . from any account or any cause whatsoever" supports Plaintiff's argument.  Plaintiff clearly intended to bind its clients to arbitration over a wide range of unforeseeable issues.  Plaintiff is attempting to limit its broadly written arbitration provision by now narrowly interpreting its language.  Such an argument does not make sense considering that *Plaintiff wrote the provision.*  Had Plaintiff wanted such a limitation, it should have written such limiting language into the arbitration provision.  The Court declines to adopt Plaintiff's interpretation, which contradicts the arbitration provision's plain language.

Also, Plaintiff mistakenly states that "[i]t is [Defendant's] burden to establish that the parties' pre-dispute arbitration clause was intended to cover the . . . appeal to the Ninth Circuit." (Opp'n 10:24-11:1.)  It is well-settled that "ambiguities in standard form contracts are to be construed against the drafter." *Victoria v. Superior Court*, 710 P.2d 833, 835 (Cal. 1985) (stating that the court "must apply these basic principles to determine whether the petitioner's causes of action fall within the scope of the arbitration clause.").  Basic contract principles require the Court to construe the arbitration provision against the drafter, in this case, Plaintiff.

Furthermore, Plaintiff's argument for enjoinment based on the possibility of a favorable appeal is unpersuasive.  The possibility of a favorable or unfavorable appeal is unknown.  The Ninth Circuit has clearly stated that the Court must give "due regard to the federal policy . . . by resolving ambiguities . . . in favor of arbitration." *Wagner*, 83 F.3d at 1049.  Plaintiff's request would force the Court to either unnecessarily speculate on the appeal's outcome or unduly delay Grant II until a decision is reached.  Thus, coupled with the federal policy favoring arbitration and principles that require construing ambiguities against the drafter, the Court finds that the Agreement's language encompasses the claims in Grant II.

In summary: (1) neither Plaintiff nor Defendant disputes that a valid agreement to arbitrate exists; and (2) the Agreement's arbitration provision broadly covers "all controversies," which includes Defendant's claims under Grant II.  Thus, because both prongs are satisfied, "the [FAA] requires

Case 2:11-cv-02915-SJO -FFM   Document 35    Filed 07/27/11   Page 8 of 8   Page ID #:669

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 11-02915 SJO (FFMx)</u>          DATE:  <u>July 27, 2011</u>

the [C]ourt to enforce the arbitration agreement in accordance with its terms."  *Chiron Corp.*, 207 F.3d at 1130.

       3.    <u>Dismissal</u>

"If . . . [a] district court decides that an arbitration agreement is valid and enforceable, then it should stay or dismiss the action pending arbitration proceedings."  *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006).  Pursuant to 9 U.S.C. § 3, a court has authority to dismiss an action where "[t]he language contained in the arbitration provision is sufficiently broad to bar all of plaintiff's claims."  *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).  As discussed above, the arbitration provision is sufficiently broad to include Defendant's Grant II claims.  As such, the Court GRANTS Defendant's Motion and DISMISSES this action.

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration.  The Court **DENIES AS MOOT** Plaintiff's Application for Preliminary Injunction.  This action is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.